UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BERNARDO A. TORRES,                                :

                Plaintiff,                          :            02 Civ. 9209 (AJP)

         -against-                        :            **OPINION AND ORDER**

JO ANNE B. BARNHART,  Commissioner of            :
Social Security,
                                                  :
            Defendant.                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Presently before the Court is plaintiff Bernardo Torres' motion for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  (Dkt. No. 45.)  Torres brought an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final determination of the Commissioner of Social Security denying Torres' claim for Supplemental Security Income ("SSI") benefits.  (See Dkt. No. 1: Compl.)  Judge Daniels granted the Government's motion to dismiss the complaint as barred by the statute of limitations.  Torres v. Barnhart, 02 Civ. 9209, 2003 WL 22801538 at *1 (S.D.N.Y. Nov. 24, 2003).  The Second Circuit vacated and remanded to determine through an evidentiary hearing "whether equitable tolling should be invoked."  Torres v. Barnhart, 417 F.3d 276, 280 (2d Cir. 2005).  Familiarity with these prior decisions is assumed.

2

On remand, the parties consented to disposition of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 39.)  Subsequently, Torres' claim was remanded by stipulation to the Commissioner of Social Security for a new hearing before an Administrative Law Judge ["ALJ"].  (See Dkt. No. 44: Stip. & Order; Dkt. No. 43: Judgment.)  Torres then sought attorneys' fees under the EAJA.  (Dkt. No. 45.)  For the reasons discussed below, Torres' motion for attorneys' fees is GRANTED, in the amount of $11,792 for fees and $60.57 for expenses, for a total of $11,852.57.

## FACTS

### Social Security Administration Proceedings

On June 7, 2000, Torres filed a pro se application for SSI benefits with the Social Security Administration ["SSA"].  (See Dkt. No. 54: SSA Administrative Record ["R."] 75-78.)  On September 5, 2000, the SSA denied Torres' claim.  (R. 45-48.)  On December 13, 2000, on reconsideration, Torres' claim again was denied.  (R. 51-54.)  On January 2, 2001, Torres requested a hearing before an ALJ.  (R. 55-56.)  On August 8, 2001, Torres, appearing pro se, testified through a Spanish interpreter at the hearing before ALJ Kenneth Scheer.  (R. 22-42.)  Torres testified that he had met with a lawyer, but she left that firm, and the new lawyer "didn't have much time."  (R. 26.)  Torres stated that he wanted to proceed with the hearing.  (R. 26.)  The ALJ questioned Torres about his general background and education (R. 28-29) and work history (R. 29-31).  The ALJ asked Torres about his allergies, asthma and related treatment including sinus surgery.  (See R. 31-33.)  ALJ Scheer asked Torres questions about his mental health treatment, as follows:

3

Q      All right.  Now did you also go in to Fulton Treatment [phonetic] Community Mental Health Center?

A      Yes, sir.

Q      And how often do you go there?

A      I go to the psychiatrist once a month and to therapy twice a week.

Q      Are you in a group?

A      Yes, sir.

Q      How do you get to the Fulton Treatment?

A      It's near my house, about a block.

Q      Do you walk?

A      Yes, sir.

Q      You walk by yourself?

A      I go with my sister, or a friend of someone from the family.

Q      Why do you need somebody to walk with you?

A      I'm afraid of the street.

Q      Do you have any friends[?]

A      Little.

Q      Have you ever been hospitalized for a psychiatric problem?

A      No, sir.

Q      Do you ever hear or see anything that's not there?

A      That I hear or see something that's not where?

Q       Hear voices, see things?

A       Yes, sir.

Q       What do you hear or see?

A       At night I hear in the kitchen things that are moving, like movements of people walking in the apartments.

Q       Do they ever talk to you?

A       Yes, sir.

Q       What do they say?

A       Lots of things.

Q       Good things or bad things?

A       Bad.

Q       What kind of bad things do they say to you?

A       I don't know.  Like bad things.

Q       Okay.  Have you ever tried to hurt yourself or anybody else?

A       No, sir.

(R. 33-35.)  ALJ Scheer concluded the exchange by asking Torres how he spends a typical day and if he has any physical problems walking, sitting, standing or lifting.  (See R. 35.)

A vocational expert also testified at the hearing.  (See R. 36-41.)  ALJ Scheer asked the vocational expert to describe Torres' past relevant work using the occupational title for each job.  (See R. 37-38.)  The ALJ presented the vocational expert with a hypothetical in which he told the

expert "to assume the person's capable of performing the exertional demands of a full range of medium work [and] . . . to assume the person is capable of performing low-stress, simple, repetitive tasks; and to avoid respiratory irritants, dust, chemicals, fumes; with no extensive running or climbing of many stairs." (R. 38.)  The vocational expert gave her opinion concerning the jobs such a hypothetical person could perform.  (See R. 38-40.)  The ALJ asked Torres if he wanted to ask the vocational expert any questions, and the following exchange occurred:

> CLMT [Torres]:      I want to ask Ms. Clark, the job that I – that you did 12 years ago when my body was younger and could sustain, which physically actually now the daily headaches, with any force, any movement that I have, produces the pain that right now I have, that I cannot stand it.  Also, I can't sustain an idea permanently.  I cannot concentrate, because when I think of something, I have to change the idea because I feel like I'm going to have an attack.

> ALJ:          Those are questions for me.  I am the person who asked Ms. Clark the hypothetical question, and it is for me to look through your medical records, ones which I have, and to make a Determination as to whether the question that I ask is fully set forth in the medical records.  If there aren't additional records that are in there that indicate that you cannot concentrate at all, or that your migraine headaches are so severe that you can't work, then of course, I will not give extensive weight to what Ms. Clark said.  But those are questions that I determine, and not Ms. Clark.  So I have already subpoen[a]ed your records at Fulton Treatment.  You have already supplied to me the opinions of your doctors.  You've given me some additional information today which I have not had a chance to look at yet.  I do find that I have enough information to make a fair Decision in your case.  So I will review all the records, I will make a written Decision, and I will send it to you.

(R. 40-41.)

On December 21, 2001, ALJ Scheer issued a decision denying Torres SSI benefits, concluding "that [Torres] is not disabled within the meaning of the Social Security Act." (R. 10-21.) ALJ Scheer explained:

Records from Fordham-Tremont Community Mental Health Center confirm treatment since July 2000 for depression, anxiety, nightmares, auditory hallucinations and panic attacks. The claimant reportedly had no prior history of psychiatric hospitalizations or psychiatric treatment. He was diagnosed with major depression with psychotic features, a generalized anxiety disorder and a panic disorder. Progress records indicate that the claimant had a good response to medications and therapy.

A psychiatric consultative examination was conducted on July 14, 2000. The diagnosis was major depression with psychotic features, and a panic disorder, not otherwise specified. His symptoms were anxiety, depression and tearfulness, but he was not suicidal or psychotic. A residual functional capacity for low stress work activity was given.

The medical evidence indicates that the claimant has a major depressive disorder, allergic rhinitis, a panic disorder, not otherwise specified and asthma, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

A determination must therefore be made whether he retains the residual functional capacity to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. . . .

In making this assessment, the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 416.929, and Social Security Ruling 96-7p. The undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations.

A treating physician from Montefiore Medical Center reported on February 15, 2[00]1 that the claimant had no functional or environmental limitations. Controlling weight is given to this treating source's opinion[]since it is well-supported by the clinical findings and not inconsistent with other medical records or opinions.

The consultative examiner who examined the claimant on August 3, 2000 on behalf of the Social Security Administration opined that the claimant should avoid

respiratory irritants such as dust, chemicals and fumes and has some restriction in his ability to run and climb stairs.

Dr. Sindos who completed a report of the claimant's psychiatric condition was unable to assess the claimant's ability to work. He told his psychiatrist that he is unable to concentrate and a psychiatric consultative examiner opined that the claimant has a limited ability to carry out instructions and respond to appropriately to supervisors, coworkers and work pressures. Progress notes indicated poor social judgment, poor relatedness, depressed mood, insomnia and auditory hallucinations. However, the claimant was also described as friendly, having a number of friends, with good attention and memory and normal motor behavior. He complained of depression, anxiety and insomnia, but medication and therapy appeared to help his symptoms and he did not complain of any side effects from medication. He testified that he just watches television during the day and does not like to go outside. However, the claimant told the consultative examiner that he spends the days taking care of his needs, resting and watching television. While he said he rarely goes out of the house, he sometimes takes short walks and socializes with a few friends and family who live in his block. He is also able to use public transportation to travel to his appointments. All in all, the evidence indicates that the claimant has a major depressive disorder and a panic disorder, not otherwise specified which causes moderate limitations of activities of daily living, social functioning, and concentration, persistence or pace; and, there is no evidence of any episodes of decompensation.

Accordingly, the undersigned finds that the claimant retains the residual functional capacity to perform low stress, medium exertional work involving simple repetitive tasks not requiring exposure to extensive respiratory irritants . . . .

. . . .

The vocational expert further testified that based upon the claimant's residual functional capacity, he could return to his past relevant work as a general laborer in the garment industry. . . .

In the hypothetical to the vocational expert, the claimant had to avoid extensive respiratory irritants. However, if the claimant had to avoid all respiratory irritants, the vocational expert testified that there would still be jobs that the claimant could perform. . . .

. . . .

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

. . . .

    2.    The claimant has a major depressive disorder, allergic rhinitis, a panic disorder, not otherwise specified and asthma, impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

    3.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

    4.    The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

    5.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments . . .

    6.    The claimant has the residual functional capacity to perform low stress, medium exertional work involving simple repet[i]tive tasks not requiring exposure to extensive respiratory irritants. . . .

(R. 18-20, record citations omitted.)  Accordingly, ALJ Scheer Torres not disabled.  (R. 20-21.)

On January 2, 2002, Torres filed a request for review of the hearing decision.  (R. 8-9.)  On May 10, 2002, the Appeals Council denied Torres' request for review, rendering final the decision that he was not disabled.  (R. 5-6.)  The Appeals Council's letter advised Torres that he had 60 days to seek judicial review.  (R. 5-6.)

**Torres' Second Application for SSI Benefits**

On June 4, 2002, Torres filed a second application for SSI benefits.  (See Dkt. No. 51: 1/19/07 Baird Fees Opp. Aff. Ex. B: 12/20/05 SSA Dec. at 1.)  The second claim was initially denied.  (See 12/20/05 SSA Dec. at 1.)  On April 22, 2005, James M. Baker from the Center for

Disability Advocacy Rights ("CeDAR"), appeared with Torres at a scheduled hearing before ALJ DeMonbreum, but the hearing was rescheduled because no translator appeared. (See 12/20/05 SSA Dec. at 1.)  At the April 22, 2005 hearing, however, the medical expert, Dr. Marvin Gardner, informed ALJ DeMonbreum and Baker that Torres "might meet a mental Listing, but he needed to review [Torres'] current treatment records, which were not in the file." (12/20/05 SSA Dec. at 1.) Baker obtained and submitted the records to the medical expert in July 2005. (See 12/20/05 SSA Dec. at 1.)  Dr. Gardner provided a statement "that confirmed that [Torres'] mental condition (depression) was indeed at Listing level." (See 12/20/05 SSA Dec. at 1.)  By letter dated November 25, 2005, ALJ DeMonbreum proposed an amended onset date and Baker "indicated that the proposed June 4, 2002 amended onset date was 'acceptable to Mr. Torres,' in the event [ALJ DeMonbreum] did not believe an earlier onset date of January 1, 2000 was supportable under the current record." (12/20/05 SSA Dec. at 1.)  ALJ DeMonbreum stated that although "symptoms related to depression and anxiety" were reported in May 2000, Torres was responsive to treatment until the "middle of 2002, [when Torres] beg[an] reporting increased episodes of anxiety due to news events on TV and due to his ongoing health problems." (12/20/05 SSA Dec. at 2.)  ALJ DeMonbreum thus declined to use an earlier onset date than June 4, 2002. (12/20/05 SSA Dec. at 1-2.)[1]

---

[1]      ALJ DeMonbreum referred to Torres' original SSI claim, as follows:

> Previously, the claimant filed application in October 2000.  An unfavorable decision was issued by another Administrative Law Judge in December 2001. Currently this claim is pending at the United States District Court.  However, since that claim is under appeal and the claimant has amended his alleged onset date to (continued...)

ALJ DeMonbreum's written decision, performing a "five-step evaluation,"[2]

"concluded that [Torres] suffers from a major depressive disorder, generalized anxiety disorder, a

_____

[1]     (...continued)
        June 4, 2002 on his pending claim before the undersigned, there is no need to discuss
        further the prior claim.

        (12/20/05 SSA Dec. at 2.)

[2]     The Supreme Court has articulated the five steps set forth in the Commissioner's regulations
        as follows:

                Acting pursuant to its statutory rulemaking authority, 42 U.S.C. §§ 405(a) (Title II),
                1383(d)(1) (Title XVI), the agency has promulgated regulations establishing a five-
                step sequential evaluation process to determine disability.  See 20 CFR § 404.1520
                (2003) (governing claims for disability insurance benefits); § 416.920 (parallel
                regulation governing claims for Supplemental Security Income).  If at any step a
                finding of disability or non-disability can be made, the SSA will not review the claim
                further.  [1] At the first step, the agency will find non-disability unless the claimant
                shows that he is not working at a "substantial gainful activity."  §§ 404.1520(b),
                416.920(b).  [2] At step two, the SSA will find non-disability unless the claimant
                shows that he has a "severe impairment," defined as "any impairment or combination
                of impairments which significantly limits [the claimant's] physical or mental ability
                to do basic work activities."  §§ 404.1520(c), 416.920(c).  [3] At step three, the
                agency determines whether the impairment which enabled the claimant to survive
                step two is on the list of impairments presumed severe enough to render one disabled;
                if so, the claimant qualifies.  §§ 404.1520(d), 416.920(d).  [4] If the claimant's
                impairment is not on the list, the inquiry proceeds to step four, at which the SSA
                assesses whether the claimant can do his previous work; unless he shows that he
                cannot, he is determined not to be disabled.  [5] If the claimant survives the fourth
                stage, the fifth, and final, step requires the SSA to consider so-called "vocational
                factors" (the claimant's age, education, and past work experience), and to determine
                whether the claimant is capable of performing other jobs existing in significant
                numbers in the national economy.  §§ 404.1520(f), 404.1560(c), 416.920(f),
                416.960(c).

_____

        Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (fns. omitted);
        accord, e.g., Snipe v. Barnhart, 05 Civ. 10472, 2006 WL 2390277 at *9 & n.11-12 (S.D.N.Y.
        Aug. 21, 2006) (Peck, M.J.) (citing cases), report & rec. adopted, 2006 WL 2621093
        (S.D.N.Y. Sept. 12, 2006).

panic disorder, and chronic sinusitis, asthma, and allergies.  These impairments are considered 'severe' impairments under the Social Security Act and Regulation, inasmuch as they cause significant limitations in the claimant's ability to perform basic work activities." (12/20/05 SSA Dec. at 4.)  ALJ DeMonbreum also found that Torres' "mental impairment (depression) meets the criteria of the Listing . . . and has done so since June 4, 2002."  (12/20/05 SSA Dec. at 4.)  ALJ DeMonbreum noted that "<u>additional medical evidence received in the course of developing [Torres']</u> <u>case for review</u> at the administrative hearing level justifies a conclusion that [Torres'] <u>impairments</u> <u>are more limiting than was concluded by the state examiners</u> as to [Torres'] mental impairments." (12/20/05 SSA Dec. at 5, emphasis added.)

**Federal Court Proceedings Regarding Torres' First SSI Claim**

On May 31, 2002, Torres contacted the Court's Pro Se Office and obtained and completed the paperwork to file a civil case challenging the SSA's final denial of his first claim for SSI benefits.  (<u>See</u> Dkt. No. 18: Torres Aff. ¶ 5.)  Afraid that he was making mistakes, Torres contacted an attorney who had given him a business card at his ALJ hearing.  (<u>See</u> Torres Aff. ¶ 6.) By the lawyer's request, Torres mailed the district court paperwork he completed, and signed and returned an attorney representation form and fee agreement.  (<u>See</u> Torres Aff. ¶¶ 7-9.)  Torres believed "that [he] had a lawyer for [his] case, and that [he] didn't have to do anything further." (Torres Aff. ¶ 10.)  However, on October 11, 2002, when Torres called the lawyer to inform him about developments concerning his second SSI claim and asked the lawyer about the status of his federal case, Torres discovered that the lawyer never filed one.  (Torres Aff. ¶ 11.)  The next business day, October 15, 2002, Torres called the Pro Se Office and asked if he could file the

complaint late.[3/]  (Torres Aff. ¶ 12.)  Torres was instructed to file a notarized statement explaining his tardiness with the complaint. (See Torres Aff. ¶ 12.)

On October 17, 2002,[4/] Torres filed the action in district court pro se, and included a notarized statement as he was instructed.  (See Dkt. No. 1: Compl.; Dkt. No. 12: 4/28/03 Baird Aff. Ex. D4: Torres Aff. at 1; see also Torres Aff. ¶ 12.)  In the notarized statement, Torres stated that he filed late because "when [he] received the letter of the Appeals Council [he] thought that [he] needed an attorney in the moment of filling out said complaint."  (4/28/03 Baird Aff. Ex. D4: Torres Aff. at 1.)

**The Equitable Tolling Issue**

On April 28, 2003, the Government moved to dismiss Torres' federal court action as barred by the time limitations under 42 U.S.C. § 405(g).  (See Dkt. No. 11: 4/28/03 Gov't Mot.; Dkt. No. 12: 4/28/03 Baird Aff. & Exs.; Dkt. No. 13: 4/24/03 Speights Aff.; Dkt. No. 14: 4/28/03 Govt. Br.)  On July 7, 2003, Baker filed a brief on Torres' behalf, including a more detailed affidavit from Torres, claiming equitable tolling should apply.  (See Dkt. No. 17: 7/7/03 Torres Tolling Br. & Exs.; Dkt. No. 18: 7/1/03 Torres Aff. & Exs.)  On July 25, 2003, the Government submitted reply papers in further support of the motion to dismiss.  (See Dkt. No. 19: 7/25/03 Govt. Reply Br.; Dkt. No. 20:

---

[3/]     Torres was presumed to have received notice of the SSA Appeals Council's decision within five days of the May 10, 2002 date of the notice, thus by May 15, 2002.  (See Dkt. No. 54: R. 5.)  Time for filing a federal complaint expires sixty days later, i.e., on July 15, 2002 in Torres' case.  See 42 U.S.C. § 405(g).  (See also R. 5.)

[4/]     The Complaint was received by the Court on October 17, 2002 but not docketed until November 19, 2002.  (See Dkt. No. 1: Compl. at 1.)

7/25/03 Baird Reply Aff.)  On September 18, 2003, Judge Daniels held oral argument regarding the statue of limitations issues.  (See Dkt. No. 25: 9/18/03 Hearing Tr.)

On November 24, 2003, Judge Daniels granted the Government's motion to dismiss Torres' case as barred by the statute of limitations, holding that equitable tolling did not apply because Torres had not demonstrated due diligence and extraordinary circumstances.  Torres v. Barnhart, 02 Civ. 9209, 2003 WL 22801538 at *1 (S.D.N.Y. Nov. 24, 2003).  (Dkt. No. 22: 11/21/03 Daniels Opinion.)

On December 4, 2003, Baker, on behalf of Torres, filed an appeal to the Second Circuit.  (Dkt. No. 24: 12/4/03 Notice of Appeal.)  On August 3, 2005, the Second Circuit vacated and remanded, holding that Judge Daniels should have conducted an evidentiary hearing, "since Torres' sworn averments of fact, though disputed, meet the legal standards for equitable tolling." Torres v. Barnhart, 417 F.3d 276, 279 (2d Cir. 2005).  The Second Circuit explained:

> Given Torres's consistent record of diligence in this case over a period of more than two years, it was unreasonable for the district court to conclude, without benefit of an evidentiary hearing, that Torres failed to exercise due diligence simply because he failed to ask the lawyer to confirm that the complaint had been timely filed. . . .

> Indeed, it was the manner in which the lawyer misled Torres, even if unintentionally, that constitutes the 'extraordinary circumstances' that render this case appropriate for equitable tolling. . . .

> As the district court noted, the failure of a retained attorney to timely file a federal social security complaint does not necessarily constitute an 'extraordinary circumstance' warranting equitable tolling.  But this pales in comparison to a case where, as here, a litigant, on the verge of timely filing his own *pro se* complaint, reasonably believes that an attorney, fully cognizant of the time constraints, has agreed to assist him in filing, only to learn later that the attorney has done nothing at all.

> What the district court failed to appreciate is that, if Torres' averments are credited, he presents the case of a legally-ignorant, linguistically-challenged *pro se* claimant who nonetheless did everything possible to try to assert his claim in a timely fashion and was only stymied from so doing by being seriously misled by an attorney in whom he placed his trust.  This states at least enough to warrant an evidentiary hearing into whether equitable tolling should be invoked.

Torres v. Barnhart, 417 F.3d at 279-80 (citations omitted).  On remand, Judge Daniels referred this case to me.  (See Dkt. No. 30: 8/4/05 Daniels Order.)

On November 3, 2005, the Government petitioned the Second Circuit for rehearing en banc, which placed the case on hold in this Court.  (See 2d Cir. No. 03-6262-cv: Dkt. 01/03/06: 11/04/05 Baird Ltr. & 2d Cir. Pet.)  On April 21, 2006, the Second Circuit denied the Government's rehearing petition.  (See 2d Cir. No. 03-6262-cv: Dkt. 04/21/06: 2d Cir. Order; Dkt. 5/05/06: 2d Cir. Corrected Order.)  The Government's motion for a stay of the Second Circuit's mandate until August 3, 2006, pending the Government's determination regarding whether to petition for certiorari in the Supreme Court (see Dkt. No. 37: 5/25/06 Baird Ltr. & Peck Order), was granted by the Second Circuit on May 31, 2006.  (See 2d Cir. No. 03-6262-cv: Dkt. 5/31/06: 2d Cir. Order.)

While these federal appellate proceedings were occurring, on July 31, 2006, the SSA Appeals Council extended Torres' "time within which to commence a civil action . . . through November 19, 2002, the date [the] civil action was filed," thus retroactively mooting the equitable tolling issue.  (See Dkt. No. 38: Att.: 7/31/06 SSA Order.)

On September 11, 2006, the parties consented, pursuant to 28 U.S.C. § 636(c), that I conduct all further proceedings in this case. (Dkt. No. 39.)  On the same day, the parties stipulated to the Social Security Commissioner's offer to remand the case for further administrative

proceedings.  (See Dkt. No. 40: 9/22/06 Baird Ltr.)  On October 17, 2006, this Court ordered the remand "pursuant to sentence four of 42 U.S.C. § 405(g)."  (See Dkt. No. 44: Stip. & Order.)

### Torres' Current Motion for Attorneys' Fees

On November 16, 2006, Torres filed a motion for attorneys' fees under the EAJA, 28 U.S.C. § 2412(d).  (Dkt. No. 45: Torres Fee Mot. & Affs.; Dkt. No. 46: Torres Fee Br.)  On January 19, 2007 the Government filed papers in opposition to Torres' attorneys' fees motion.  (Dkt. No. 50: Gov't Fee Opp. Br.; Dkt. No. 51: Baird Fee Opp. Aff.)  On February 20, 2007, Torres filed reply papers.  (Dkt. No. 52: Torres Reply Fee Br.; Dkt. No. 53: Baker Reply Aff.)

Torres seeks $11,976.93 in attorneys' fees and expenses.  (See Torres Reply Fee Br. 10 & n.3.)

### ANALYSIS

### I.    THE EAJA:  LEGAL PRINCIPLES

The EAJA provides that in a civil action against the United States, the Court "shall award" attorneys' fees and expenses to the prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).[5/]  "Thus, eligibility for a fee award in any civil action requires:  (1) that

---

[5/]     The EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States
> (continued...)

the claimant be a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; [and] (3) that no 'special circumstances make an award unjust. . . .'" Comm'r, I.N.S. v. Jean, 496 U.S. 154, 158, 110 S. Ct. 2316, 2319 (1990); accord, e.g., Kerin v. U.S. Postal Serv., 218 F.3d 185, 189 (2d Cir. 2000).

"A prevailing party is one that has 'succeeded on any significant issue in litigation which achieved some of the benefit the part[y] sought in bringing suit,' such that the party is able to 'point to a resolution of the dispute which changes the legal relationship between itself and the [adversary].'" Kerin v. U.S. Postal Serv., 218 F.3d at 189 n.1 (alterations in original).

"With respect to administrative actions, the term 'position of the United States' includes the government's litigating position as well as the position taken by the administrative agency on the merits. [28 U.S.C.] § 2412(d)(2)(D)."[6] Sotelo-Aquije v. Slattery, 62 F.3d 54, 57 (2d Cir. 1995); see also, e.g., Comm'r, I.N.S. v. Jean, 496 U.S. at 159, 110 S. Ct. at 2319; Healey v. Leavitt, 485 F.3d 63, 67 (2d Cir. 2007); United States v. $19,047.00 in U.S. Currency, 95 F.3d 248, 251 (2d Cir. 1996); Fed. Election Comm'n v. Political Contributions Data, Inc., 995 F.2d 383, 386 (2d Cir. 1993), cert. denied, 510 U.S. 1116, 114 S. Ct. 1064 (1994); Smith by Smith v. Bowen, 867 F.2d 731, 734 (2d Cir. 1989); Trichilo v. Sec'y of Health & Human Servs., 823 F.2d 702, 708 (2d

---

[5]     (...continued)
        was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

[6]     The EAJA states that the Government's position includes both "the position taken by the United States in the civil action[] [and] the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

Cir. 1987). "The burden is on the Government to show that its position was substantially justified. '[T]he strong deterrents to contesting Government action require that the burden of proof rest with the Government.' Moreover, 'where a party has had to engage in lengthy administrative proceedings before final vindication of his or her rights in the courts, the government should have to make a strong showing to demonstrate that its action was reasonable.'"[7/] Eames v. Bowen, 864 F.2d 251, 252 (2d Cir. 1988) (citations omitted); see, e.g., Healey v. Leavitt, 485 F.3d at 67; United States v. $19,047.00 in U.S. Currency, 95 F.3d at 251; Cohen v. Bowen, 837 F.2d 582, 585 (2d Cir. 1988); Envtl. Def. Fund, Inc. v. Watt, 722 F.2d 1081, 1085-87 (2d Cir. 1983).

       The Supreme Court has defined "substantially justified" to mean "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550 (1988); accord, e.g., Healey v. Leavitt, 485 F.3d at 67. "The test is 'essentially one of reasonableness.'" Fed. Election Comm'n v. Political Contributions Data, Inc., 995 F.2d at 386; accord, e.g., Commodity Futures Trading Comm'n v. Dunn, 169 F.3d 785, 786 (2d Cir.), cert. denied, 528 U.S. 825, 120 S. Ct. 73 (1999); see also, e.g., Cohen v. Bowen, 837 F.2d at 585-86. "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government

---

[7/]     "Unlike the § 2414(d)(1)(B) prescriptions on what the applicant must *show* (his 'prevailing party' status, and 'eligib[ility] to receive an award,' and 'the amount sought . . .'), the required 'not substantially justified' allegation imposes no proof burden on the fee applicant. It is, as its text conveys, nothing more than an allegation or pleading requirement. The burden of establishing 'that the position of the United States was substantially justified,' § 2412(d)(1)(A) indicates and courts uniformly have recognized, must be shouldered by the Government." Scarborough v. Principi, 541 U.S. 401, 414, 124 S. Ct. 1856, 1865 (2004) (citing cases, emphasis in original).

litigation of which a reasonable person would approve." Pierce v. Underwood, 487 U.S. at 566, 108

S. Ct. at 2550.  "[T]he issue for EAJA purposes is whether the agency had a reasonable basis in fact

or law to take the position that it did, at the time that it made its decision." Sotelo-Aquije v. Slattery,

62 F.3d at 58; see, e.g., Pierce v. Underwood, 487 U.S. at 565, 108 S. Ct. at 2550 ("justified to a

degree that could satisfy a reasonable person [] is no different from the 'reasonable basis both in law

and fact' formulation"); see also, e.g., Comm'r, I.N.S. v. Jean, 496 U.S. at 158 n.6, 110 S. Ct. at 2319

n.6 (endorsing the "'reasonable basis both in law and fact'" formulation cited in Pierce and used by

several circuit courts in EAJA cases).

## II.   TORRES IS ENTITLED TO LEGAL FEES UNDER THE EAJA

### A.   Torres Is the Prevailing Party

"[A] party who wins a sentence-four remand order is a prevailing party." Shalala v.

Schaefer, 509 U.S. 292, 302, 113 S. Ct. 2625, 2632 (1993);[8/] see, e.g., Rose v. Barnhart, 01 Civ.

1645, 2007 WL 549419 at *2 (S.D.N.Y. Feb. 16, 2007); Choudhury v. Barnhart, 04 Civ. 0142, 2004

WL 2053014 at *2 (S.D.N.Y. Sept. 15, 2004) (Peck, M.J.), report & rec. adopted, 2005 WL 2592048

(S.D.N.Y. Oct. 11, 2005); McKay v. Barnhart, 327 F. Supp. 2d 263, 267 (S.D.N.Y. 2004) ("[A]

---

[8/]   "No holding of this Court has ever denied prevailing-party status . . . to a plaintiff who won
a remand order pursuant to sentence four of § 405(g).  Dicta in [a previous Supreme Court
case] stated that 'a Social Security claimant would not, as a general matter, be a prevailing
party within the meaning of the EAJA merely because a court had remanded the action to the
agency for further proceedings.'  But that statement (like the holding of the case) simply
failed to recognize the distinction between a sentence-four remand, which terminates the
litigation with victory for the plaintiff, and a sentence-six remand, which does not. . . . [T]he
sentence-four, sentence-six distinction is crucial to the structure of judicial review
established under § 405(g)." Shalala v. Schaefer, 509 U.S. at 300-01, 113 S. Ct. at 2631
(citations omitted).

plaintiff who is awarded a § 405(g) sentence-four remand is a prevailing party."); Edwards v. Barnhart, 238 F. Supp. 2d 645, 649 (S.D.N.Y. 2003) ("[B]y obtaining a sentence four remand a claimant immediately prevails whether or not he ultimately obtains benefits, and he may recover attorney's fees for the judicial proceeding in which he prevailed.").  The parties in this case stipulated to, and the Court "so ordered," a remand "to the Commissioner of Social Security, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings." (Dkt. No. 44: Stip. & Order.)  The Court thus agrees that Torres "became the prevailing party when he succeeded in having his case remanded to the agency."  (Dkt. No. 46: Torres Fee Br. at 4; see also Dkt. No. 45: Bernard Aff. ¶ 2.)  The Government does not dispute Torres' prevailing party status.  (See Dkt. No. 50: Gov't Fee Opp. Br. at 7.)

Thus, the only issues this Court must address are whether the position of the United States was "substantially justified," and if it was not, the appropriate fee amount to award.

**B.      The Government's Position Was Not Substantially Justified**

"Once a party has demonstrated that it is a prevailing party under the EAJA, the burden shifts to the government to demonstrate that its litigation position was 'substantially justified.'" Commodity Futures Trading Comm'n v. Dunn, 169 F.3d 785, 786 (2d Cir.), cert. denied, 528 U.S. 825, 120 S. Ct. 73 (1999); see also cases cited at page 17 above.  The EAJA defines the Government's "position" as both  "the position taken by the United States in the civil action" and "the action or failure to act by the agency upon which the civil action is based."  28 U.S.C. § 2412(d)(2)(D); see also cases cited at page 16 above.  The government thus must justify both positions to avoid liability for EAJA fees.  See, e.g., Fed. Election Comm'n v. Political Contributions

Data, Inc., 995 F.2d 383, 386 (2d. Cir. 1993), cert. denied, 510 U.S. 1116, 114 S. Ct. 1064 (1994).

The Government must demonstrate that its position was "justified to a degree that could satisfy a

reasonable person." Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541 at 2550 (1988); see

also cases cited at pages 17-18 above. The Court's determination as to whether the Government's

position was substantially justified is "a multifarious . . . question, little susceptible . . . of useful

generalization" as either a question of law or fact. Pierce v. Underwood, 487 U.S. at 562, 108 S. Ct.

at 2548.

### 1.   The Government Has Not Shown that the Agency's Action Was Substantially Justified

The ALJ has a duty to ensure that the claimant receives "a full hearing under the

Secretary's regulations and in accordance with the beneficent purpose of the [Social Security] Act."

Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 43 (2d Cir. 1972). "Because a hearing on

disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation

to develop the administrative record. This duty exists even when the claimant is represented by

counsel." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citations omitted); accord, e.g., Morgan

v. Barnhart, 04 Civ. 6024, 2005 WL 2978976 at *1-2 (S.D.N.Y. Nov. 7, 2005) (Peck, M.J.); Acosta

v. Barnhart, 99 Civ. 1355, 2003 WL 1877228 at *9-11 (S.D.N.Y. Apr. 10, 2003) (Peck, M.J.);

Jiminez v. Massanari, 00 Civ. 8957, 2001 WL 935521 at *8-10 (S.D.N.Y. Aug. 16, 2001) (Peck,

M.J.); Jones v. Apfel, 66 F. Supp. 2d 518, 537-39 (S.D.N.Y. 1999) (Pauley, D.J. & Peck, M.J.);

Craven v. Apfel, 58 F. Supp. 2d 172, 185-87 (S.D.N.Y. 1999) (Preska, D.J. & Peck, M.J.). Where

a claimant appears at the hearing pro se, as Torres did, the ALJ "is under a heightened duty '"to

scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'"'

Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990).[9/]  "The ALJ is thus 'obligated to explore the facts by

obtaining relevant medical records and asking questions . . . to assist the claimant in developing her

case.'"  Rosado v. Barnhart, 290 F. Supp. 2d 431, 438 (S.D.N.Y. 2003) (alterations in original);

accord, e.g., Devora v. Barnhart, 205 F. Supp. 2d at 173; Craven v. Apfel, 58 F. Supp. 2d at 185-86

(citing cases).

     The ALJ's duty to assist a claimant in developing their case works in tandem with the

"treating physician rule."[10/]  As one court aptly explained:

> [W]hen the claimant appears pro se, the combined force of the treating physician rule
> and of the duty to conduct a searching review requires that the ALJ make every
> reasonable effort to obtain not merely the medical records of the treating physician

---

[9/]    Accord, e.g., Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982); Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980); Gold v. Sec'y of Health, Educ., & Welfare, 463 F.2d at 43; Morgan v. Barnhart, 04 Civ. 6024, 2005 WL 925594 at *12 n.21 (S.D.N.Y. Apr. 21, 2005) (Peck, M.J.); Morris v. Barnhart, 02 Civ. 0377, 2002 WL 1733804 at *8 n.16 (S.D.N.Y. July 26, 2002) (Peck, M.J.); Devora v. Barnhart, 205 F. Supp. 2d 164, 172-73 (S.D.N.Y. 2002); Tucker v. Massanari, 99 Civ. 12037, 2001 WL 868031 at *7 n.18 (S.D.N.Y. Aug. 1, 2001) (Peck, M.J.); DeLeon v. Apfel, 00 Civ. 3701, 2000 WL 1873851 at *8 n.6 (S.D.N.Y. Dec. 21, 2000) (Peck, M.J.); Jones v. Apfel, 66 F. Supp. 2d at 538; Craven v. Apfel, 58 F. Supp. 2d at 185; Vaughn v. Apfel, 98 Civ. 0025, 1998 WL 856106 at *6 (S.D.N.Y. Dec. 10, 1998); Mejias v. Apfel, 96 Civ. 9680, 1998 WL 651052 at *5 (S.D.N.Y. Sept. 23, 1998); Maestre v. Appel, 96 Civ. 8273, 1998 WL 477950 at *4 (S.D.N.Y. Aug. 13, 1998); Prentice v. Apfel, 11 F. Supp. 2d 420, 425 (S.D.N.Y. 1998); Dawson v. Apfel, 96 Civ. 6023, 1997 WL 716924 at *7 (S.D.N.Y. Nov. 17, 1997); Rodriguez v. Apfel, 96 Civ. 1132, 1997 WL 691428 at *4 (S.D.N.Y. Nov. 4, 1997); Mann v. Chater, 95 Civ. 2997, 1997 WL 363592 at *3 (S.D.N.Y. June 30, 1997).

[10/]    The treating physician rule requires the ALJ to grant controlling weight to the opinion of a claimant's treating physician if the opinion is well supported by medical findings and is not inconsistent with other substantial evidence.  See 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2).  See generally Quezada v. Barnhart, 06 Civ. 2870, 2007 WL 1723615 at *9-10 (S.D.N.Y. June 15, 2007) (Peck, M.J.) (citing cases).

> but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability.

Peed v. Sullivan, 778 F.Supp. 1241, 1246 (E.D.N.Y. 1991); accord, e.g., Craven v. Apfel, 58 F. Supp. 2d at 186 (citing cases).

Torres contends that the Government's pre-litigation position was not substantially justified because "the ALJ's efforts to develop the record were plainly inadequate." (Dkt. No. 46: Torres Fee Br. at 7.) At the hearing on August 8, 2001, Torres appeared before ALJ Scheer without counsel and testified through a Spanish interpreter. (See page 2 above.) Torres also was undisputably suffering from "a major depressive disorder." (See pages 5-8 above.) Regardless of whether Torres was considered disabled under the SSA's definitions, he was assuredly "'handicapped by lack of counsel' at the administrative hearing," and ALJ Scheer thus had a heightened duty to develop the record. Hankerson v. Harris, 636 F.2d at 895. However, the record reveals a host of lost opportunities where ALJ Scheer should have questioned Torres more fully concerning various aspects of his testimony. The hearing was brief; the transcript only 20 pages. (See Dkt. No. 54: R. 22-42; see discussion at pages 2-5 above.) ALJ Scheer also made no meaningful effort to explore what kind of treatment Torres had been receiving for his physical and mental health problems and whether the treatment was effective. (See pages 2-4 above.) Despite a few questions by ALJ Scheer regarding Torres' hallucinations, ALJ Scheer never questioned Torres about his depression or other psychiatric impairments, never inquired about the frequency or severity of any attacks, never asked about his subjective symptoms, and never asked Torres to explain how his symptoms prevented him from working. (See pages 2-4 above.) The Second Circuit "has repeatedly held that a claimant's

testimony concerning his pain and suffering is not only probative on the issue of disability, but 'may serve as the basis for establishing disability, even when such pain is unaccompanied by positive clinical findings or other "objective" medical evidence.'"  Hankerson v. Harris, 636 F.2d at 895;[11/] see, e.g., Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755-56 (2d Cir. 1982) (The ALJ did not protect plaintiff's right to a full and fair hearing because "despite numerous references in the medical records and testimony by [the claimant] concerning [the claimant's] subjective symptoms of serious pain, the ALJ did not fully inquire into what specifically caused [the claimant] to leave his job or the full degree of the pain and the extent to which it prevents him from working."); Craven v. Apfel, 58 F. Supp. 2d at 174, 187 ("[T]he ALJ should have questioned the plaintiff more fully on her subjective inability to concentrate or to complete tasks . . . [T]he extent of plaintiff's injuries is not clear from the record and [] the ALJ failed to develop the record sufficiently to make an appropriate decision in either direction."  "By failing to ask [plaintiff] more detailed questions about her psychological symptoms at the hearing, and about the mental demands associated with her former job or any other job she might obtain, the ALJ failed to adequately fulfill his affirmative obligation to assist [plaintiff] in developing her case.") (citing cases).

---

[11/]     The Second Circuit explained:

> [W]here the medical record before the ALJ contained a number of references to plaintiff's subjective symptoms, it was particularly important that the ALJ explore these symptoms with plaintiff so that the ALJ could effectively exercise his "discretion to evaluate the credibility of . . . (the) claimant . . . (in order to) arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."

Hankerson v. Harris, 636 F.2d at 895-96 (alterations in original).

ALJ Scheer also did not attempt to fill in gaps in the records of Torres' treating physicians.  As one example, Dr. Sindos, Torres' treating psychiatrist, returned an assessment form but left blank portions of the form meant to describe the patient's functional limitations.  (R. 340-44.) Under the section asking for an evaluation of "the individual's ability to adjust to a job," Dr. Sindos merely wrote "patient reports not having worked for 10 years."  (R. 342.)  When asked to "state any other work-related activities which are affected by the impairment," the doctor wrote "unable to assess."  (R. 344.)  ALJ Scheer relied upon the report to make his decision that Torres was able to work.  (See pages 6-7 above.)  However, ALJ Scheer did not obtain more complete information from Dr. Sindos.  If the ALJ obtains a report from a treating physician that is ambiguous or incomplete, the ALJ must make diligent efforts to supplement and clarify the information.  See, e.g., Rosado v. Barnhart, 290 F. Supp. 2d at 439-41 (ALJ was required to recontact the treating psychiatrist who had stated that she was unable to evaluate claimant's mental limitations in a work setting); Devora v. Barnhart, 205 F. Supp. 2d at 174-75 (citing cases); Geracitano v. Callahan, 979 F. Supp. 952, 956 (W.D.N.Y. 1997) (ALJ required to seek clarification when treating physician report was incomplete); Peed v. Sullivan, 778 F. Supp. at 1247 (ALJ was chastised for "read[ing] these records as much for what they did not, as for what they did in fact, state . . . [because] the ALJ cannot substitute his opinion for that of the treating physician; he cannot . . . replace the diagnosis of the doctor who knows the patient best with his own reading of the claimant's history").  At the minimum, ALJ Scheer did not inform Torres that the doctor's form was incomplete and inadequate to support his claim.  See, e.g., Hankerson v. Harris, 636 F.2d at 896 ("basic principles of fairness require that [the

ALJ] inform the [pro se] claimant of his proposed action and give him an opportunity to obtain a more detailed statement"); Jones v. Apfel, 66 F. Supp. 2d at 539-40.

Although more examples exist, the Court's role in an EAJA fees motion is not to determine whether the ALJ failed to develop the record. Rather, the Government bears the burden to establish that the agency's position was substantially justified. The Government's attempts to justify the ALJ's position here are sparse. The Government argues that the fact that the parties stipulated to remand the action "does not raise a presumption that the Commissioner's position here was not substantially justified under the EAJA." (Dkt. No. 50: Gov't Fee Opp. Br. at 14.) The Court agrees. However, the stipulation also does not provide any support for the claim that the ALJ's position was substantially justified, and the Government bears the burden of proof on this issue.

The Government also argues that since some evidence in the administrative record supports the ALJ's decision and we do not know if the ALJ's decision would have been different had the ALJ considered other information, therefore the ALJ's position was substantially justified. (Gov't Opp. Fee Br. at 12-13.) The Court disagrees. The question for the Court to address is not whether the ALJ made the correct decision regarding Torres' disability status, but whether the ALJ fulfilled his responsibility to ensure that Torres received a full and fair hearing, and whether the Government has met its burden to show that the ALJ's position was substantially justified. After reviewing the ALJ hearing transcript, medical records, and the Government's fee opposition brief, as well as the second ALJ's determination that Torres had a mental disability, the Court seriously questions whether ALJ Scheer met his obligation to develop the record. More importantly, the Court finds that

the Government has not satisfied its burden of establishing that the ALJ's position was substantially justified.

> **2.     The Government is Responsible for Fees Throughout the Adjudicatory Process**

The Government argues that "no fees should be awarded for time spent litigating the statute of limitations issue because the Commissioner prevailed on a motion to dismiss the action in this Court." (Dkt. No. 50: Gov't Fee Opp. Br. at 18; see also id. at 8-11.)  Because this Court has determined that the Government's position at the agency level was not substantially justified, however, Torres is entitled to attorneys' fees for the entire proceedings before the agency <u>and</u> before this Court.  As the Second Circuit has held:

> If a court determines that "the underlying agency action was not substantially justified, the victim of that unjustified action is entitled to all reasonable attorney's fees," including all fees and expenses "reasonably incurred in connection with the vindication of his rights."  Thus, if the underlying Government position is not substantially justified, a court <u>must</u> award fees for counsel's representation before the agency <u>and in all subsequent litigation of the matter</u>-even if the Government's litigation position is itself reasonable when considered alone.  Without this rule, a person who considers challenging an agency decision would face the prospect of not receiving compensation for his advocacy in potentially protracted litigation in federal court.  This would certainly discourage an aggrieved party from seeking full "vindication of his rights" under the EAJA.

<u>Smith by Smith</u> v. <u>Bowen</u>, 867 F.2d 731, 734 (2d Cir. 1989) (emphasis added, citations omitted); <u>accord</u>, <u>e.g.</u>, <u>id.</u> at 735 ("[I]f the Government's underlying position is <u>not</u> substantially justified, then the Court is required to award fees for representation during <u>all</u> phases of the case, even if the Government's position in some portions of the litigation, when considered apart from the underlying agency decision, was reasonable."); <u>Trichilo</u> v. <u>Sec'y of Health & Human Servs.</u>, 832 F.2d 743, 745

(2d Cir. 1987) ("[C]ongress has made clear that it is inappropriate to examine separate parts of the litigation to determine whether the government's position in each phase was justified.  Instead, as long as the government's underlying substantive position was not 'substantially justified', the plaintiff is entitled to recover all reasonable attorney's fees incurred."); Trichilo v. Sec'y of Health & Human Servs., 823 F.2d 702, 708 (2d Cir. 1987)  ("Were the government's litigation position the sole criterion for the award of fees, it might be justified to look at different phases of the litigation separately to determine whether the litigation position in each phase was 'substantially justified'.  But since the litigation position is no longer the relevant criterion, there is no reason to divide up phases of the litigation for examination.  In short, if the underlying agency action was not substantially justified, the victim of that unjustified action is entitled to all reasonable attorney's fees, including those incurred on the fee application.").[12]

        The Government contends that Torres' case differs from these precedents because the Commissioner's position at the agency level was substantially justified and also because "the Commissioner's position with respect to equitable tolling was not derived from an underlying administrative decision subject to judicial review."  (Dkt. No. 50: Gov't Fee Opp. Br. at 16.)  The Court disagrees.  As to the former, the Court has already held that the Commissioner has not sustained its burden of showing that ALJ Scheer's conduct was substantially justified.  As to the

---

[12]        On the other hand, where "the underlying Government position *is* substantially justified," the "bar against segmentation . . . does not apply."  Smith by Smith v. Bowen, 867 F.2d at 735 (emphasis in original).  However, "[i]n defending an agency decision, even a reasonable one, the Government should be discouraged from engaging in dilatory or otherwise unacceptable litigation tactics" and "the District Court still ha[s] authority to award EAJA fees for the time spent overcoming unreasonable legal maneuverings by the Government during the litigation in federal court."  Smith by Smith v. Bowen, 867 F.2d at 735.

latter argument, the Second Circuit has made clear that if the agency conduct was not substantially justified, the plaintiff is entitled to all fees, without segmentation and regardless of the reasonableness of the Government's litigation position.  If Torres' claim had not been denied by the ALJ, the equitable tolling issues never would have arisen.  For him to be made whole, as the Second Circuit has instructed, he is entitled to all fees under the EAJA.[13]/  Because the Court has found that the Government did not show that the underlying administrative position was substantially justified, Torres is entitled to all attorneys' fees and expenses reasonably incurred in connection with the vindication of his rights, both at the agency level and in court proceedings.  Accordingly, the merits of the Government's stance on the equitable tolling issue are irrelevant and the Court need not address them.

**C.     No Special Circumstances Exist Which Would Make an Award of Attorneys' Fees Unjust**

Even if an agency's position was not substantially justified, an award of fees may be denied or reduced under the EAJA if the court finds "that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  The Second Circuit has held that courts should apply "traditional equitable principles" to determine if "special circumstances" exist. Oguachuba v. I.N.S.,

---

[13]/     The Government has not suggested that Torres' conduct during the litigation was unreasonable.  Compare McLaurin v. Apfel, 95 F. Supp. 2d 111, 113-14 (E.D.N.Y. 2000) ("The Act further provides that a court has discretion to reduce the amount awarded or to deny an award if the prevailing party 'engaged in conduct which unduly or unreasonably protracted the final resolution of the matter in controversy.'") (quoting 28 U.S.C. § 2412(d)(1)(C)).

706 F.2d 93, 98 (2d Cir. 1983);[14]/ see also, e.g., United States v. 27.09 Acres of Land, 43 F.3d 769,

772 (2d Cir. 1994).  For example, fees may be denied or reduced when awarding them would be

"plainly inequitable," such as when the prevailing plaintiff is "without clean hands."  Oguachuba v.

I.N.S., 706 F.2d at 99 (prevailing plaintiff committed "notorious and repeated violations of United

States immigration law" in relation to his case).  "That few courts apparently have relied upon this

[special circumstances] exception to EAJA awards in denying fee applications is evidence that the

circumstances of a case will infrequently justify a denial of an award."  Taylor v. United States, 815

F.2d 249, 253 (3d Cir. 1987).

        The Government argues at length that since "[t]he Commissioner took the reasonable

position in this case that plaintiff's complaint should be dismissed as time-barred" (Dkt. No. 50:

Gov't Fee Opp. Br. at 8), that "it would be unjust to require the defendant to pay plaintiff's attorney's

fees for litigating the timeliness of plaintiff's complaint."  (Gov't Fee Opp. Br. at 15.)   The

Government reasons that "it would be inequitable to require the Government to pay plaintiff's legal

expenses for . . . [equitable tolling] relief [which] . . . was available only as a discretionary matter"

(Gov't Fee Opp. Br. at 15), and "[i]t would not be in keeping with the spirit and purpose of the

[EAJA] to require the Government to pay plaintiff's attorney's fees for raising the issue of the

untimeliness of a complaint that was filed three months late" (Gov't Fee Opp. Br. at 16).  Thus, the

---

[14]/    "In elaborating upon the 'special circumstances' exception, the House Report accompanying the EAJA concluded, . . . [t]his 'safety valve' helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts.  *It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.*"  Oguachuba v. I.N.S., 706 F.2d at 98 (emphasis in original).

Government contends that "plaintiff's petition for EAJA fees should be denied in part because 'special circumstances' make an award of EAJA fees unjust." (Gov't Fee Opp. Br. at 14.)  However, the Government does not claim any wrongdoing by Torres, does not cite any actions which would constitute Torres' unclean hands, and does not claim Torres violated any other specific equitable principles.  (See Gov't Fee Opp. Br. at 14-17.)  Instead, the Government merely characterizes arguments related to the equitable tolling issue as  "special circumstances" under the EAJA.  (See Gov't Fee Opp. Br. at 15-16.)  The Second Circuit has specifically held that reasonable conduct by the Government on appeal is not considered a "special circumstance" warranting a reduction in EAJA fees.  See Trichilo v. Sec'y of Health & Human Servs., 832 F.2d 743, 745 (2d Cir. 1987) ("We reject the government's position that the reasonability of its position on appeal amounts to a 'special circumstance' that would 'make an award unjust'.  Reading the 'special circumstances' exception so broadly would, in effect, swallow the very rule we announced in our earlier opinion.  This we decline to do.").  The Court declines to find that any of the equitable tolling issues amount to "special circumstances" warranting a denial or reduction of fees under the EAJA.

## III.    THE AMOUNT OF THE AWARD

The EAJA provides that the "fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).  "A request for attorney's fees should not result in a second major litigation. . . . [T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.  The

applicant should exercise 'billing judgment' with respect to hours worked . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

### A.     The Hours Expended Are Reasonable

"In determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. . . . The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.' . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. at 433-34, 103 S. Ct. at 1939-40.  "The product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward." Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940.  "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."[15] Hensley v. Eckerhart, 461

---

[15]     "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." Hensley v. Eckerhart, 461 U.S. at 440, 103 S. Ct. at 1943.  However, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id. at 435, (continued...)

U.S. at 440, 103 S. Ct. at 1943.   "There is no precise rule or formula for making these

determinations." Hensley v. Eckerhart, 461 U.S. at 436, 103 S. Ct. at 1941.  "The district court has

broad discretion in" determining if time was reasonably expended and "need not . . . scrutinize[] each

action taken or the time spent on it," Aston v. Sec'y of Health & Human Servs., 808 F.2d 9, 11 (2d

Cir. 1986), but the Court has a duty to discount any "[e]xorbitant, unfounded, or procedurally

defective fee applications" and ensure the final award is reasonable.  Comm'r, I.N.S. v. Jean, 496

U.S. 154, 163, 110 S. Ct. 2316, 2321 (1990).

Torres seeks attorneys' fees of $11,976.96.  (See, e.g., Dkt. No. 52: Torres Reply Fee

Br. at 10 n.3.)[16/]  The Government objects to fees "for time spent litigating the statute of limitations

issue because the Commissioner prevailed on a motion to dismiss the action in this Court." (Gov't

Fee Opp. Br. at 18.)   However, since the Government has not shown that the underlying

administrative position was substantially justified, Torres is entitled to "all attorney's fees and

expenses reasonably incurred in connection with the vindication of his rights, including those related

to . . . any appeal." Trichilo v. Sec'y of Health & Human Servs., 832 F.2d 743, 745 (2d Cir. 1987)

(emphasis added); see discussion at pages 26-28 above.  Indeed, the relief Torres obtained, remand

to the Social Security Agency, came only after the Second Circuit reversed the district court and

upheld Torres' claim for equitable estoppel, at least to the extent of ordering a hearing on that issue.

---

[15/]    (...continued)
103 S. Ct. at 1940.

[16/]    This "credits" the Government for $307.00 for 1.9 hours of time spent on appeal, to which
the Government had objected.  (Dkt. No. 50: Gov't Fee Opp. Br. at 18; Torres Reply Fee Br.
at 10 n.3.)

(See pages 13-14 above.)  Thus, the Court declines to label any of Torres' claims "unsuccessful" and declines to exclude any of the hours spent on those claims as unreasonably expended.

The Government otherwise does not challenge the time spent by Torres' counsel.  (See Gov't Fee Opp. Br. at 17-19.)  In addition, the Court has reviewed the hours Torres' counsel spent on each task and finds them reasonable.  (See Dkt. No. 45: Baker Aff. ¶¶ 3-4 & Att. Time Records; Dkt. No. 45: Bernard Aff. Exs. A & B; Dkt. No. 53: Baker Reply Aff. ¶ 2.)[17]

Some district courts in the Second Circuit have held that in "routine" Social Security benefits cases "compensated hours generally range from twenty to forty hours" of attorney time. DiGennaro v. Bowen, 666 F. Supp. 426, 433 (E.D.N.Y. 1987) (citing cases); see also, e.g., Grey v. Charger, 95 Civ. 8847, 1997 WL 12806 at *1 (S.D.N.Y. Jan 14, 1997) (citing cases).  The issues before the Court here were not "routine" review of the administrative record, but the issue of equitable tolling of the statute of limitations.  Moreover, "[t]he courts in this district have not hesitated to award attorney's fees well in excess of the routine twenty to forty hours where the facts of the specific case warrants [sic] such an award."  Hinton v. Sullivan, 84 Civ. 9276, 1991 WL 123960 at *5 (S.D.N.Y. July 2, 1991) (awarding fees for 158.55 hours plus 31.55 additional hours on EAJA fee request); see, e.g., Aston v. Sec'y of Health & Human Servs., 808 F.2d at 11-12 (affirming the district court's award of fees for 200 hours under the EAJA); Moses v. Shalala, 91 Civ.

---

[17]    "In the exercise of reasonable billing judgment, [Baker did not seek] compensation for 5.3 hours of work . . . related to the fee application." (Dkt. No. 45: Baker Aff. ¶ 4.) Bernard did "not seek compensation for approximately 15 hours spent working on certain ancillary tasks performed by non-attorneys such as verifying citations and assembling sections of documents being prepared for filing" (Bernard Aff. ¶ 18) and did not seek additional compensation for "more than ten hours [devoted] to the preparation of Mr. Torres' reply papers" (Baker Reply Aff. ¶ 3).

6980, 1994 WL 75516 at *1 (S.D.N.Y. Mar. 7, 1994) (holding 120 hours of attorney time expended was "not unreasonable" because the case "involved detailed factual analysis of the administrative record"); <u>Garcia</u> v. <u>Bowen</u>, 702 F. Supp 409, 411 (S.D.N.Y. 1988) (awarding fees for 156.2 hours; citing cases); <u>DiGennaro</u> v. <u>Bowen</u>, 666 F. Supp. at 433 ("special factors . . . justify granting an award for a greater than average number of hours . . . [because] counsel were brought in at the District Court level, years after the claim was instituted on a *pro se* basis, [and] there were numerous documents and transcripts to be reviewed"); <u>Zayas</u> v. <u>Heckler</u>, 585 F. Supp. 1109, 1112 (S.D.N.Y. 1984) (awarding fees for 148 hours).  The issues before the Court were not "routine" and justified the hours spent;  indeed, the Government does not object to the reasonableness of the time expenditures on the tasks specified.  (<u>See</u> Gov't Fee Opp. Br. at 17-18.)

**B.    <u>The Hourly Rates Requested Are Reasonable</u>**

Torres requests hourly rates greater than $125 based on an "adjust[ment] for inflation since March 1996."  (Dkt. No. 46: Torres Fee Br. at 13; Dkt. No. 45: Bernard Aff. ¶ 21.)  Such "cost-of-living adjustments" are supported by the EAJA itself and by Second Circuit caselaw.  28 U.S.C. § 2412(d)(2)(A); <u>see</u>, <u>e.g.</u>, <u>Trichilo</u> v. <u>Sec'y of Health & Human Servs.</u>, 823 F.2d 702, 706-07 (2d Cir. 1987).  The Court must apply a different "cost of living adjustment . . . as measured by the Consumer Price Index ["CPI"] . . . for each year in which the legal work was performed" rather than applying a single adjustment to the total hours billed.  <u>Kerin</u> v. <u>U.S. Postal Serv.</u>, 218 F.3d 185, 194 (2d Cir. 2000); <u>see also</u>, <u>e.g.</u>, <u>Harris</u> v. <u>Sullivan</u>, 968 F.2d 263, 265 (2d Cir. 1992) (The cost of living increase allowed under the EAJA is "properly measured by the Consumer Price Index.")  Torres seeks reimbursement of attorneys' fees for hours billed in 2003, 2005, 2006 and 2007.  (<u>See</u> Dkt. No.

45: Bernard Aff. Exs. A & B; Dkt. No. 53: Baker Reply Aff. ¶ 2.)  Bernard states that the adjusted

hourly rates are "$148 for work performed in 2003, $154 for work performed in 2004, $160 for work

performed in 2005, and $166 for work performed in 2006."[18]  (Torres Fee Br. at 13; see also Bernard

Aff. ¶ 21.)  Torres' counsel have not submitted CPI statistics nor their calculations.  However, since

the Government does not object to plaintiff's CPI calculations, the Court will not question or recreate

the calculations.  See, e.g., Hiciano v. Apfel, 98 Civ. 4037, 2002 WL 1148413 at *3 (S.D.N.Y.

May 29, 2002) (awarding CPI adjusted EAJA fees based on "defendant's calculations, which plaintiff

does not dispute."); cf. United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand,

Two Hundred Dollars, 438 F. Supp. 2d 67, 70 (E.D.N.Y. 2006) (arriving at CPI adjusted EAJA rates

of $159.25 for 2005 and $163.50 for 2006).

      Accordingly, the Court awards Torres attorneys' fees in the amount of $11,792,

calculated as follows:

---

[18]     Torres' reply brief uses a rate of $166 for hours worked in 2007 ($1,577 / 9.5 hours = $166 per hour).  (See Dkt. No. 52: Torres Fee Reply Br. at 10 n.3; Dkt. No. 53: Baker Reply Aff. ¶ 2.)

|  | 2003 | 2005 | 2006 | 2007 | Totals |
|---|---|---|---|---|---|
| Baker | 36.5 | 2.5 | 18.9 | 9.5 | 57.9 |
| Bernard |  | 3.4 | 2.6 |  | 6 |
| Attorney Hours | 36.5 | 5.9 | 21.5 | 9.5 | 63.9 |
| Attorney Rates | $148 | $160 | $166 | $166 |  |
| Attorney Fees | $5,402 | $944 | $3,569 | $1,577 | $11,492 |
| Paralegal Hours |  | 15 |  |  |  |
| Paralegal Rate |  | $20 |  |  |  |
| Paralegal Fees |  | $300 |  |  | $300 |
| **Totals** | $5,402 | $1,244 | $3,569 | $1,577 | **$11,792** |

## C.    Expenses, But Not Costs, Are Recoverable by an In Forma Pauperis Plaintiff

"[W]hile the EAJA generally waives the United States's immunity from costs and a

successful claimant may recover costs against the government in a social security action, it does so

'*[e]xcept as otherwise specifically provided by statute*,' 28 U.S.C. § 2412(a) (emphasis added), and

the *in forma pauperis* statute, 28 U.S.C. § 1915(f)(1), bars an award of costs against the government

where a litigant proceeds under that statute." Maida v. Callahan, 148 F.3d 190, 193 (2d Cir. 1998).

Since Torres obtained leave to proceed in forma pauperis in this case (see Dkt. No. 2: I.F.P. Aff. &

Order), his ability to recover costs is governed by 28 U.S.C. § 1915(f)(1), which provides:

"Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings,

but the United States shall not be liable for any of the costs thus incurred." 28 U.S.C. § 1915(f)(1).

"Rule 54(d) of the Federal Rules of Civil Procedure generally governs the taxation

of costs against an unsuccessful litigant in federal district court." Whitfield v. Scully, 241 F.3d 264,

269 (2d Cir. 2001).  The Supreme Court stated that 28 U.S.C. "§ 1920 defines the term 'costs' as used

in Rule 54(d).  Section 1920 enumerates expenses that a federal court may tax as a cost under the

discretionary authority found in Rule 54(d)."  <u>Crawford Fitting Co.</u> v. <u>J.T. Gibbons, Inc.</u>, 482 U.S.

437, 441-42, 107 S. Ct. 2494, 2497 (1987).  Section 1920 defines "costs" as:

> (1) Fees of the clerk and marshal;

> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

> (3) Fees and disbursements for printing and witnesses;

> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

> (5) Docket fees under section 1923 of this title . . .

28 U.S.C. § 1920.  Thus, working backward, items enumerated in 28 U.S.C. § 1920 are "costs" and

not recoverable byan IFP party against the United States; items not enumerated in § 1920 may be

considered "expenses," delineated separately within § 2412(d)(1)(A),[19] not governed by 28 U.S.C.

§ 1915(f)(1), and thus recoverable against the United States.

Torres seeks "reimbursement in the amount of $184.56 for expenses" under 28 U.S.C.

§ 2142(d)(2)(A).  (Dkt. No. 45: Bernard Aff. ¶¶ 17, 24 & Ex. C.)  This figure includes amounts for

Westlaw computer research, duplicating, faxing, docketing services, and process servers.  (Bernard

Aff. Ex. C.)

---

[19]    "[A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a) . . ."  28 U.S.C. § 2412(d)(1)(A).  Subsection (a) provides, in part:  "Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but <u>not including</u> the fees and <u>expenses</u> of attorneys, may be awarded to the prevailing party . . ."  28 U.S.C. § 2412(a)(1) (emphasis added).

Transcripts which were "necessarily obtained" are listed under 28 U.S.C. § 1920(2) as a "cost."  This Court "request[ed that] the parties, unless there is economic or other objection, [] purchase the transcript," and both parties agreed.  (See Dkt. No. 32: 8/18/05 Conf. Tr. at 8.)  On the basis of this colloquy, and that my practice generally is to require parties to order the transcript of a Court conference, the "stenographic transcript [was] necessarily obtained," and thus it is a cost and the Government is not liable for "Court Reporting Services" ($27.28).  (See Bernard Aff. Ex. C at 7, entry dated 8/26/05.)  See, e.g., Liberty Theaters Inc. v. Becker, No. 99-7585, 201 F.3d 431 (table), 1999 WL 1070076 at *1 (2d Cir. Nov. 18, 1999).

"Duplicating Costs" ($8.15), "Facsimile Charges" ($50.06), "Pacer Search Service" ($1.36) and "Long Distance Telephone" costs ($1.00) (see Bernard Aff. Ex. C at 7-8, 10) are not considered costs under § 1920 and are instead recoverable against the United States under the EAJA as expenses.   See, e.g., United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir. 1996) ("[C]omputer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost."); Aston v. Sec'y of Health & Human Servs., 808 F.2d 9, 11 (2d Cir. 1986) ("[T]elephone, postage . . . and photocopying costs . . . are reimbursable under the EAJA as reasonable 'fees and other expenses.'") (citing cases); see also Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead."); Carbonell v. Acrish, 154 F. Supp. 2d 552, 569 (S.D.N.Y. 2001) (Peck, M.J.) ("[F]ax and long distance telephone charges . . . are not reimbursable as 'costs'

pursuant to Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1920.  Rather, they are 'those

reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients,' and

as such reimbursable only as part of statutory attorneys' fees.").

The plain language of § 1920(1) does not delineate private process server fees as

costs, only fees for the U.S. Marshal.  Nevertheless, the Second Circuit has allowed private process

server fees to be awarded as costs.  See, e.g., United States v. Merritt Meridian Constr. Corp., 95

F.3d  at 172.  The Court in its discretion therefore holds that "Process Service & Calendar Watch"

amounts ($110.00) are not recoverable against the United States as expenses in this case.  (Bernard

Aff. Ex. C at 7-8.)

The Court grants Torres "expenses" under § 2142(d)(1)(A) in the amount of $60.57

($8.15 + $50.06 + $1.36 + $1.00 ).

## CONCLUSION

For the reasons stated above, the Court grants Torres' EAJA attorneys' fees and costs

in the amounts of (i) $11,792.00 for attorneys' fees and (ii) $60.57 for expenses, for a total of

$11,852.57.

SO ORDERED.

DATED:        New York, New York
              June 25, 2007


              _____
              **Andrew J. Peck**
              United States Magistrate Judge


Copies to:    James L. Bernard, Esq.
              James M. Baker, Esq.
              Susan D. Baird, Esq.